IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

KYLEN MAJOR,

    Plaintiff,

v.

ANTHONY D. WILLS, BRADLEY
SADLER, TYNER MATTEW, JOHN
DOE #1, JOHN DOE #2, JANE DOE
NURSE, JOHN DOE #3
CORRECTIONAL OFFICER, JOHN
DOE #4 SERGEANT, and
JOHN DOE #5 SANITATION OFFICER,

    Defendants.

Case No. 25-cv-1211-NJR

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

    Plaintiff Kylen Major, an inmate of the Illinois Department of Corrections who is currently incarcerated at Menard Correctional Center, brings this action for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. On June 9, 2025, Major filed his Complaint alleging constitutional violations while housed at Menard (Doc. 1). On July 7, 2025, Major filed an Amended Complaint (Doc. 10). His Amended Complaint alleges that Defendants used excessive force, denied him medical care, and subjected him to unconstitutional conditions of confinement, all in violation of the Eighth Amendment.

    This case is now before the Court for preliminary review of the Amended Complaint pursuant to 28 U.S.C. § 1915A. Under Section 1915A, the Court is required to screen prisoner complaints to filter out non-meritorious claims. *See* 28 U.S.C. § 1915A(a).

1

Any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b).

## The Amended Complaint

On November 27, 2024, Major had an emergency crisis while in Menard's west cellhouse (Doc. 10, p. 8). He asked that John Doe Correctional Officer on 7 gallery (hereinafter John Doe #3) ask Tyner Mattew to come to Major's cell due to the emergency (*Id.*). Instead, John Doe #3 stated that he did not care about Major's problems and instructed him to be quiet (*Id.*). Major responded that he did not appreciate being disrespected by John Doe #3 (*Id.*).

Approximately ten minutes after the encounter with John Doe #3, both Tyner Mattew and John Doe #3 approached Major's cell and ordered him out of the cell (Doc. 10, p. 8). Major believed that he was going to a hearing on a disciplinary ticket. Tyner cuffed Major, and the two officers directed Major downstairs and out of the west cellhouse. Major questioned where they were taking him and John Doe #3, Mattew, and John Doe Sanitation Officer (hereinafter John Doe #5) forced Major outside of the cellhouse (*Id.*). Bradley Sadler approached the group and accused Major of mouthing off to his officers (*Id.*). Major directed Sadler to watch how he talked to him and directed Sadler to respect him (*Id.*). Sadler laughed at Major and noted that he thought he was a tough guy (*Id.* at p. 9). Mattew pushed Major's face into the gate and pulled on his handcuffs, causing them to tighten (*Id.*). He then pushed him through the gate into the gravel road (*Id.*). He pushed Major to the ground and he, Sadler, John Doe #3, and John

2

Doe #5 assaulted Major, punching and kicking him in the ribs, back, and legs (*Id.*). Sadler also maced Major in the nose and mouth and placed his foot on the back of Major's head, pushing his face into the gravel (*Id.*).

Sadler eventually informed Major that he called for the Emergency Response Team ("ERT") (Doc. 10, p. 9). When the two ERT officers arrived (hereinafter John Doe #1 and John Doe #2), Sadler instructed them to place leg irons on Major and make them extra tight (*Id.* at p. 10). The officers complied and then picked Major off the ground, placing him in a hold with his arms in the air, his head down, and his butt in the air with his pants at his knees (*Id.*). The handcuffs and leg irons dug into his skin, drawing blood (*Id.*). Despite Major's requests that the officers slow down and help him pull up his pants, the officers continued to drag him to the healthcare unit.

John Doe #1 and John Doe #2 placed him in a room in the healthcare unit (Doc. 10, p. 11). Major alleges that he was in extreme pain, the handcuffs and leg irons continued to dig into his skin, and he could barely breathe (*Id.*). He also had gravel on his face and in his hair (*Id.*). Jane Doe Nurse asked for his name and identification number (*Id.*). Although Major told her about the assault and his injuries, the nurse simply turned to the ERT officers and asked about the white stuff in his face and hair. They responded that it was gravel. She then told them she was done, and that Major could leave (*Id.* at p. 11).

Sadler entered the examination room and asked if Major had learned his lesson (Doc. 10, p. 11). Major questioned whether the lesson was how the staff liked to attack inmates in handcuffs (*Id.*). In response, Sadler threatened to mace Major again. Another unknown officer entered the room and read Major his rights (*Id.*). The officer asked what

3

happened and Major recounted the assault by the officers (*Id.*). When finished with his statement, the officer indicated that Major could be taken to restrictive housing (*Id.*).

John Doe #1 and John Doe #2 returned to the room to escort Major to restrictive housing. He asked if they could loosen his cuffs because of the pain, but they grabbed Major and dragged him to restrictive housing (Doc. 10, p. 12). Once there, they forced Major onto a bench in a cage and smashed his face into the wall before taking off his cuffs (*Id.*). Major requested medical care for his injuries, but the ERT officers merely laughed and left the cell (*Id.*). Correctional Officer Garcia transported Major to his restrictive housing cell. The cell lacked a mattress and was dirty, filled with mold, dust, dirty clothes, and moldy food (*Id.*).

Later that day, Major received a disciplinary ticket for a staff assault (Doc. 10, p. 12). He later went to a hearing on the ticket where he asked the adjustment committee members to review the camera footage of the assault (*Id.*). The committee refused to view the footage and, instead, found Major guilty of the charge. He received one year in segregation (*Id.*). He wrote a letter to Warden Anthony Wills about the assault, denial of medical care, and fabricated ticket (*Id.*). He also wrote the governor (*Id.*). While housed in segregation, Major lacked access to his property, was denied sheets and blankets, and subjected to extremely cold conditions (*Id.* at p. 13). He also lacked access to the yard and medical care (*Id.*).

## Preliminary Dismissals

Major alleges that while housed in restrictive housing, he faced unconstitutional conditions of confinement. He states in conclusory fashion that both Anthony Wills and

Bradley Sadler violated his right to safe and humane living conditions (Doc. 10, p. 14), but he fails to allege that they were aware of the conditions he faced in segregation. There is no indication that Sadler was present when Major was placed in the segregation cell nor are there any allegations to suggest that Major informed him of the conditions. Major alleges that Correctional Officer Garcia placed him in the cell, but Garcia is not listed as a defendant in the case caption. *See* FED. R. CIV. P. 10(a); *Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005). Major also alleges that he wrote a letter to Warden Wills about the assault, medical care, the fabricated ticket, and his placement in segregation as a part of his discipline, but there are no allegations to suggest that he complained about the conditions in segregation. He later alleges that the governor sent "defendant" letters about Major and that plaintiff wrote to "defendant" about the horrible living conditions (Doc. 10, p. 13), but Major fails to identify the defendant that he wrote to about his conditions of confinement. He also fails to indicate when he wrote this letter or the contents of the letter. *See Perez v. Fenoglio*, 792 F.3d 768, 781-82 (7th Cir. 2015) ("An inmate's correspondence to a prison administrator may…establish a basis for personal liability under [Section] 1983 where that correspondence provides sufficient knowledge of a constitutional deprivation."). There are simply no allegations to suggest that either defendant was aware of the conditions in Major's cell or acted with deliberate indifference in response to those conditions. Thus, the conditions of confinement claim against Sadler and Warden Wills is **DISMISSED without prejudice**.

Major also identifies a John Doe Sergeant in his case caption but fails to include any allegations against him in his statement of claim. Thus, any claim against the John

5

Doe Sergeant is **DISMISSED without prejudice**. Major also refers to a John Doe officer who interviewed him while he was in the infirmary. There are no allegations to suggest that this individual violated Major's rights in any way, nor is he included in the case caption as a defendant. Any claim against this unknown officer is also **DISMISSED without prejudice**.

Major also mentions receiving a false disciplinary ticket. He notes that he received one year in segregation and describes conditions that he experienced while there. But it is not clear that Major seeks to bring a claim for alleged due process violations. He mentions the disciplinary hearing but fails to identify any of the individuals at the hearing. Nor does he identify the officer who issued the disciplinary ticket. Further, it appears that Major received due process for the ticket. Due process safeguards that are associated with prison disciplinary hearings include: (1) advance written notice of the charges; (2) the opportunity to appear before an impartial hearing body to contest the charges; (3) the opportunity to call witnesses and present documentary evidence as a defense (if prison safety allows and subject to the discretion of correctional officers); and (4) a written statement summarizing the reasons for the discipline imposed. *See Wolff v. McDonnell*, 418 U.S. 539, 563-69 (1974). Major acknowledges receiving the ticket and appearing before the adjustment committee where he directed them to view available camera footage (Doc. 10, p. 12). Nothing in the Amended Complaint suggests that his due process rights were violated. Thus, any potential claim regarding his disciplinary ticket is **DISMISSED without prejudice**.

## Discussion

Based on the allegations in the Amended Complaint, the Court designates the following counts:

**Count 1:** **Eighth Amendment excessive force claim against Tyner Mattew, Bradley Sadler, John Doe #1 ERT Officer, John Doe #2 ERT Officer, John Doe #3 Gallery Officer, and John Doe #5 Sanitation Officer for their use of force against Major on November 27, 2024.**

**Count 2:** **Eighth Amendment deliberate indifference claim against John Doe #1 ERT Officer, John Doe #2 ERT Officer, and Jane Doe Nurse for their failure to treat Major's injuries after the assault.**

The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Amended Complaint but not addressed in this Order should be considered dismissed without prejudice as inadequately pled under the *Twombly* pleading standard.**[1]

At this stage, Major states a viable claim in Count 1 against Tyner Mattew, Bradley Sadler, John Doe #1, John Doe #2, John Doe #3, and John Doe #5 for their use of force against Major. He also states a viable claim against John Doe #1, John Doe #2, and Jane Doe Nurse for their failure to provide him with medical care after the assault. He alleges that Jane Doe Nurse simply looked him over, asked officers about the gravel, and cleared him for transport to segregation. He further alleges that he specifically asked John Doe

---

[1] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

#1 and John Doe #2 for care when he arrived in segregation. Thus, Count 2 shall also proceed.

In order to help identify the unknown defendants, Defendant Anthony Wills will remain in the case (in his official capacity only) to respond to discovery aimed at identifying the unknown officers and nurse.

### Motion for Counsel

With his original pleading, Major filed a motion for counsel (Doc. 3). Major noted that he had some high school education but was unable to represent himself due to his comprehension skills. He fails to indicate the exact issue that limits his comprehension skills. Further, given the early stage of the litigation process, it is difficult to accurately evaluate the need for the assistance of counsel. *See Kadamovas v. Stevens*, 706 F.3d 843, 845 (7th Cir. 2013) ("[U]ntil the defendants respond to the complaint, the plaintiff's need for assistance of counsel … cannot be gauged.").[2] There is nothing currently pending that would require counsel. Once Defendants have been served and file answers, the Court will enter a scheduling order setting forth the next steps in the litigation process. If Major experiences difficulties in litigating the case at that point, he may submit another request for counsel. At this time, his motion is **DENIED**.

---

[2] In evaluating the motion for counsel, the Court applies the factors discussed in *Pruitt v. Mote*, 503 F.3d 647, 654 (7th Cir. 2007), and related authority.

### Disposition

For the reasons stated above, Count 1 shall proceed against Tyner Mattew, Bradley Sadler, John Doe #1 ERT Officer, John Doe #2 ERT Officer, John Doe #3 Gallery Officer, and John Doe #5 Sanitation Officer. Count 2 shall proceed against John Doe #1 ERT Officer, John Doe #2 ERT Officer, and Jane Doe Nurse. Warden Anthony Wills remains in the case, in his official capacity only, for the purpose of identifying the unknown defendants. All other potential claims and defendants are **DISMISSED without prejudice**.

The Clerk of Court shall prepare for Tyner Mattew, Bradley Sadler, and Anthony Wills (official capacity only): (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons) and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Amended Complaint, and this Memorandum and Order to each defendant's place of employment as identified by Major. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

If a defendant can no longer be found at the work address provided by Major, the employer shall furnish the Clerk with the defendant's current work address, or, if not known, defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the

address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the Amended Complaint and shall not waive filing a reply pursuant to 42 U.S.C. Section 1997e(g). **Pursuant to Administrative Order No. 244, Defendants need only respond to the issues stated in this Merit Review Order**.

Because Major's claims involve his medical care, the Clerk of Court is **DIRECTED** to enter the Court's standard HIPAA Qualified Protective Order.

If judgment is rendered against Major, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs, regardless of whether his application to proceed *in forma pauperis* is granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Finally, Major is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not later than **14 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED: August 14, 2025

*[signature: Nancy J. Rosenstengel]*

NANCY J. ROSENSTENGEL
Chief U.S. District Judge

## Notice to Plaintiff

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your Amended Complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to your Amended Complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answer, but it is entirely possible that it will take **90 days** or more. When all the defendants have filed Answers, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. Plaintiff is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. **Plaintiff need not submit any evidence to the Court at this time, unless specifically directed to do so.**